# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE PITTS ) <br> 209 Careybrooke Lane ) <br> Oxon Hill, Maryland 20745 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HOWARD UNIVERSITY ) <br> 2400 Sixth Street, N.W. ) <br> Washington, District of Columbia 20059 ) <br> ) <br> Defendant. ) <br> _____ ) | COMPLAINT <br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

Plaintiff TYRONE PITTS, by and through his attorneys, CATHARINE E. EDWARDS and SHARON Y. EUBANKS, respectfully submits to this Court and alleges as follows:

**COMPLAINT AND NATURE OF THE CASE**

1. Plaintiff Tyrone Pitts ("Plaintiff" or "Mr. Pitts"), an employee of Howard University, brings this action against Howard University ("Defendant" or "Howard"), to redress issues of race discrimination and retaliation by Howard University during his employment with Howard University. Mr. Pitts has been continuously employed by Howard from November 1998 to the present.

2. Plaintiff brings this action pursuant to the whistleblower protection provisions of the False Claims Act, 31 U.S.C. § 3730(h), to remedy retaliation by Defendant for Plaintiff's reporting potential tax irregularities and financial mismanagement he uncovered while working as Assistant Treasurer in the office of the Chief Financial Officer ("CFO"). The retaliation Plaintiff experienced involved holding Plaintiff responsible for operational failures over which he had no control, and failure to provide Mr. Pitts with written performance appraisals, which are

a prerequisite to obtaining pay increases. Because of Plaintiff's threatened disclosures, Defendant refused to provide pay increases equal to that given to all other staff in the Treasurer's office.

3. Plaintiff also brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII"), 42 U.S.C. § 1981 (hereinafter "§ 1981") and the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 (hereinafter "DCHRA") to remedy discrimination on the basis of race.

4. Additionally, Plaintiff brings this action pursuant to Title VII's protection against employer retaliation, 42 U.S.C. § 2000e-3(a), to remedy retaliation by Defendant against Plaintiff for Plaintiff's filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Specifically, Mr. Pitts filed a discrimination charge with the EEOC on October 26, 2010. That discrimination charge alleged, among other things, that Plaintiff had been retaliated against for filing internal discrimination complaints with Howard. But for Defendant's retaliation against Plaintiff for pursuing his complaints of discrimination, harassment, and retaliation, Plaintiff would not have been reassigned to the position of Payroll Director, a lesser position in terms of responsibility and leadership at the University. The reassignment constituted an adverse employment decision directly linked to his EEO activities.

## JURISDICTION, VENUE, AND STATUTE OF LIMITATIONS

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action based on employment discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq. (Count II) and in violation of 42 U.S.C. § 1981 (Count III); employer retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count V); and employer retaliation in violation of

the False Claims Act, 31 U.S.C. §§ 3730(h), 3732(a) (Count I).  This Court has supplemental jurisdiction over Plaintiff's state law claim (Count IV) pursuant to 28 U.S.C. § 1367.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed in the judicial district of the District of Columbia, which is also where Plaintiff works.  Venue in this Court is also proper pursuant to 31 U.S.C. § 3732(a) because the Defendant can be found, resides, or transacts business in the District of Columbia, which is also where the retaliatory acts occurred.

7. This complaint, being filed today, is within the statutes of limitations provided by 42 U.S.C. § 2000e-5(e)(1) and D.C. CODE § 2-1402.11.

## PROCEDURAL HISTORY

8. Plaintiff filed a timely Charge of Discrimination with the EEOC on October 26, 2010 (Charge No. 570-2011-00036).  On July 30, 2013, Plaintiff received a notice of right to sue from the EEOC.

## PARTIES

**I.     Plaintiff**

**Tyrone Pitts, Former Assistant Treasurer and Current Director of Payroll**

9. Tyrone Pitts is an African-American male currently residing in Oxon Hill, Maryland.  In November 1998, Howard University hired Mr. Pitts as a Section Chief in the Office of the Controller.  In March 1999, Mr. Pitts took the position of Director of Cash Management in the CFO's office.  Mr. Pitts was promoted to Senior Treasurer Director in the Office of the CFO in 2007.  In January 2010, Plaintiff was promoted to the position of Assistant Treasurer reporting directly to Robert Tarola, the CFO, and Bridgette Sarikas, Deputy CFO for

3

Howard University.  On March 22, 2011, Mr. Pitts was placed in the position of Director of Payroll and Budget Officer, reporting to Jimmy Jones, Executive Vice-President and Chief Talent Management Officer.

10. On October 7, 2010, Plaintiff filed an official internal complaint with Antwan Lofton, Director of Howard's EEO office.  The complaint was against the Office of the CFO and Bridgette Sarikas, the Deputy CFO, alleging a pattern of discrimination against African Americans, including Plaintiff.

11. On October 26, 2010, Mr. Pitts filed a formal charge with the EEOC and the D.C. Office of Human Rights, alleging discrimination, harassment and retaliation.

12. On March 22, 2011, Howard removed Plaintiff from his position in the office of the CFO and placed him in the position of Payroll and Budget Officer in the Human Resources department.

## II.   Defendant

### Howard University

13. Defendant Howard University is a private university that maintains its principal offices in Washington, District of Columbia.

14. Howard University was established by an Act of Congress on March 2, 1867, and began operating May 1, 1867.

15. In each year since 1928, Congress has authorized an appropriation of federal funds to aid in the construction, development, improvement, and maintenance of Howard University.

16. In 2011, Howard University received a federal appropriation of $234,977,000.00.

17. In 2012, Howard University received a federal appropriation of $234,507,000.00. Federal funds were projected to support approximately 46% of the University's educational and general expenditures for fiscal year 2012, excluding the Howard University Hospital, which receives a separate federal appropriation.

18. Robert Tarola, Howard University CFO, Vice President, and Treasurer, and Bridgette Sarikas, Howard University Deputy CFO, are not employees of Howard but rather, are consultants employed by Defendant through Mr. Tarola's company, Right Advisory. According to Howard University's IRS Form 990 for 2012, Right Advisory earned $1,606,867.00 from Howard for "management compensation."

19. In the organizational structure of Howard University, the Office of the Assistant Treasurer included as the top position "Assistant Treasurer." According to the February 2, 2012 Howard University organizational chart, which identified Mr. Pitts in the position of Assistant Treasurer, there were 26 different positions reporting to Mr. Pitts. The organizational chart for Payroll Director/Budget Officer, a position to which Mr. Pitts was reassigned, included four direct reports to Mr. Pitts after his reassignment.

20. The position of Payroll Director includes fewer responsibilities than the position of Assistant Treasurer.

21. The Position of Payroll Director involves fewer direct reports than the position of Assistant Treasurer.

**FACTS**

22. Mr. Pitts has been employed by Howard University for approximately 15 years.

23. Plaintiff's salary is $140,000.00 per year. Based on Mr. Pitts's performance, after only four months of serving in the position of Assistant Treasurer, he was given a $40,000.00

raise. At approximately the same time that Plaintiff was given the $40,000.00 raise, he was informed by his supervisors that his work would diminish because a consulting firm, Urish Propeck, would be drafting policies and procedures for the Accounts Payable unit. It was made clear to Plaintiff by his supervisors that he was to abandon any work on tax issues and was to allow Urish Propeck exclusively to handle such issues. Mr. Tarola, the CFO, had a prior and/or existing relationship with Urish Propeck, one that Plaintiff believes created a conflict of interest.

24. Plaintiff continued to assert concerns about tax issues, and he brought those concerns to the Deputy CFO, Ms. Sarikas in March 2010. Ms. Sarikas told Mr. Pitts to form a task force to determine the full scope of the problem. Plaintiff did so, and when his recommendation was prepared, it was rejected by Ms. Sarikas and Mr. Tarola without review. It was made very clear to Mr. Pitts by Mr. Tarola and Ms. Sarikas that he was to have no further involvement in tax issues, and that the firm of Urish Propeck would be the point of contact on all of those issues. Following this incident, Ms. Sarikas began frequently to refer to African Americans on her staff as "you people," and she began to blame Plaintiff for virtually every problem that occurred in the Accounts Payable and Payroll departments. Ms. Sarikas excluded Mr. Pitts from important meetings yet she held him accountable for what occurred or how matters were resolved in the meetings he was not invited to attend.

25. On October 7, 2010, Plaintiff submitted an internal complaint of discrimination. In that complaint, Plaintiff alleged that his white supervisors, Ms. Sarikas and Mr. Tarola, created a hostile work environment and discriminated against him because he was African American.

26. About five months after Plaintiff asserted his internal discrimination complaint, on March 22, 2011, Howard transferred Plaintiff from his position as Assistant Treasurer to the position of Payroll and Budget Officer.

27. The Howard University EEO office conducted an investigation of Mr. Pitts's internal discrimination complaint. According to a letter dated October 31, 2011 from Howard Deputy General Counsel Leroy Jenkins, Mr. Tarola and Ms. Sarikas received counseling as a result of Plaintiff's complaint.

28. In addition to the counseling received as a result of Mr. Pitts's complaint, by letter dated November 7, 2011, Deputy General Counsel Leroy Jenkins informed Mr. Pitts that, "Howard University acted on a recommendation to re-assign [Plaintiff] to the Office of Human Resources to function as its Director of Payroll." The letter further informed Mr. Pitts that this action—the reassignment—concluded the matter of his internal discrimination complaint and constituted final resolution of the matter.

29. Mr. Pitts was informed by Jimmy Jones, the Executive Vice President and Chief Talent Management Officer, that if he refused to sign the offer letter to complete the reassignment to the position as Director of Payroll/Budget Officer, he would be fired by Mr. Tarola. Rather than be fired, Mr. Pitts signed the reassignment letter on May 22, 2011.

30. Mr. Pitts filed a charge of discrimination against Howard with the EEOC on October 26, 2010. In that continuing action, he addressed the same race discrimination and retaliation that was raised in his internal EEO complaint, noting that it was continuing. Mr. Pitts provided supplemental information to the EEOC regarding his claims, including the fact that Ms. Sarikas failed to provide Plaintiff with a performance appraisal, thereby making him ineligible for a raise beyond the 3% cost of living allowance. The failure to provide the performance

appraisal actually occurred in response to the possibility that Mr. Pitts would disclose information he possessed about financial mismanagement and tax issues.

31. On July 1, 2012, Defendant moved Plaintiff back under the supervision of the CFO and the Deputy CFO. This transfer was undertaken unilaterally by Mr. Tarola without consent from the Office of General Counsel, notwithstanding the prior statement from Deputy General Counsel Leroy Jenkins that the matter was concluded and that no further action would be taken. This move was in retaliation for Mr. Pitts's threat that he would possibly engage in whistleblowing regarding the financial mismanagement he had observed. Although he was moved back under the supervision of the CFO's Office, Mr. Pitts was not restored to his previous position of Assistant Treasurer.

## COUNT I – RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

32. Paragraphs 1 through 31 are realleged as though fully set forth herein.

33. The whistleblower protection provisions of the False Claims Act, 31 U.S.C. § 3730(h), protect employees from being discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

34. By a series of actions, Defendant retaliated against Mr. Pitts for engaging in protected activity under 31 U.S.C. §3730(h). Mr. Pitts reported the potential irregularities and financial mismanagement that he discovered, issues which may have uncovered a possible fraud upon Howard University. Instead of being encouraged by his management, he was stopped in his tracks and told that a contractor, Urish Propeck, would be responsible for those issues going

forward. He was told that he was to abandon any work on tax issues and was to allow Urish Propeck exclusively to handle such issues. Mr. Tarola, the CFO, had a prior and/or existing relationship with Urish Propeck, one that Plaintiff believes created a conflict of interest.

35. Defendant retaliated against Mr. Pitts for his aforementioned conduct by failing to provide him raises beyond the cost of living allowance. Similarly, his return to work in the CFO's office with no elevation in title constituted retaliation under the whistleblower provisions of the False Claims Act.

36. Defendant is therefore liable under 31 U.S.C. § 3730(h) to provide Mr. Pitts with all relief necessary to make him whole for its retaliatory actions against him for his efforts to report and address the aforementioned issues of waste, fraud, and abuse at Howard University. Pursuant to 31 U.S.C. § 3730(h), Mr. Pitts is entitled to two times the amount of back pay, interest on the back pay, and compensation for any special damages, including litigation costs and attorneys' fees, sustained as a result of Defendant's retaliation against him for his protected activities under 31 U.S.C. § 3730(h).

## COUNT II – RACE DISCRIMINATION IN VIOLATION OF TITLE VII

37. Paragraphs 1 through 36 are realleged as though fully set forth herein.

38. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, provides that:

   (a) It shall be an unlawful employment practice for an employer
       (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
       (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

39. Defendant engaged in unlawful employment practices prohibited by Title VII by creating a hostile work environment with references to African Americans as "you people" and by reassigning Mr. Pitts and unfairly blaming him for the mistakes of others.

40. As a direct and proximate result of Defendant's aforementioned conduct, Mr. Pitts has suffered economic damages, mental and emotional harm, anguish, and humiliation.

41. Defendant's practices and procedures have produced a disparate impact upon Mr. Pitts, as an African American employee, with respect to the terms and conditions of his employment.

42. Given the continuous nature of Defendant's discriminatory conduct that persisted throughout Mr. Pitt's employment at Howard University from October 2010 to the present, Mr. Pitts is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

43. By reason of Defendant's discriminatory conduct, Mr. Pitts is entitled to all legal and equitable remedies available under Title VII.

**COUNT III – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

44. Paragraphs 1 through 43 are realleged as though fully set forth herein.

45. Defendant's discrimination against Mr. Pitts because of his race, as described above, is in violation of 42 U.S.C. § 1981.

46. Through its discriminatory conduct with respect to compensation and the terms and conditions of Mr. Pitts's employment, Defendant deprived Mr. Pitts of equal rights because of his race in violation of 42 U.S.C. § 1981.

## COUNT IV – RACE DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

47. Paragraphs 1 through 46 are realleged as though fully set forth herein.

48. Defendant's discrimination against Mr. Pitts because of his race, as described above, is in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

49. Through its discriminatory conduct with respect to compensation and the terms and conditions of Mr. Pitts's employment, Defendant deprived Mr. Pitts of equal employment opportunities because of his race in violation of D.C. Code § 2-1402.11.

## COUNT V – RETALIATION FOR FILING AN EEOC CHARGE IN VIOLATION OF TITLE VII

50. Paragraphs 1 through 49 are realleged as though fully set forth herein.

51. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, provides that it shall be an unlawful employment practice for an employer to "discriminate against any of his employees…because [s]he has opposed…an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

52. By filing an informal complaint with the Howard EEO office, as well as a formal Charge of Discrimination with the EEOC, Mr. Pitts availed himself of protected rights under Title VII, including, but not limited to, the right to oppose and report discriminatory behavior by his employer.

53. As a result, Howard University retaliated against Mr. Pitts through its decision to demote him, permanently, to the position of Payroll Officer. At all relevant times, Howard

University was fully aware of Mr. Pitts's pending EEOC discrimination charge, which was filed in October 2010.

54. Howard University engaged in an unlawful employment practice prohibited by 42 U.S.C. § 2000e-3(a), by retaliating against Mr. Pitts with respect to the terms, conditions, and/or privileges of his employment because of his opposition to the unlawful employment practices of Howard University.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1. For Count I, an award of two times the amount of back pay, interest on the back pay, and compensation for any special damages, including litigation costs and reasonable attorneys' fees;

2. Declaratory judgment that Howard University's employment policies, practices, and/or procedures challenged herein are illegal and in violation of the False Claims Act, Title VII, § 1981 and the District of Columbia Human Rights Act;

3. A permanent injunction against Howard University and its officers, directors, cabinet members, employees, and/or representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, gender discrimination, and retaliation by the Defendant as set forth herein;

4. An Order requiring Howard University to initiate and implement programs that will eliminate the continuing effects of the discriminatory and retaliatory practices described above;

5. An award of back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by Plaintiff to be determined at trial;

6. Any other appropriate equitable relief to which Plaintiff is entitled;

7. An award of compensatory, nominal, and punitive damages to Plaintiff;

8. Pre-judgment interest;

9. Post-judgment interest;

10. Such other and further relief as the Court may deem just and proper; and

11. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendant has remedied the practices, policies, and/or procedures complained of herein and are determined to be in full compliance with the law.

### JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated: September 13, 2013

    Respectfully submitted,

*Sharon Y. Eubanks*
Sharon Y. Eubanks, District of Columbia Bar No. 420147
Catharine E. Edwards, District of Columbia Bar No. 100457

**Edwards & Eubanks, LLC**
2000 P Street NW, Suite 300
Washington, DC 20036
Office Telephone: (202) 223-2732
Cell phone: (202) 505-3904
Email: sharon@edwardseubanks.com

*Counsel for Plaintiff*