UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**TYRONE PITTS,**

    **Plaintiff,**

        v.

**HOWARD UNIVERSITY,**

    **Defendant.**

Civil Action No. 13-1398 (JEB)

## MEMORANDUM OPINION

Plaintiff Tyrone Pitts has worked at Defendant Howard University for over fifteen years in a variety of finance-related roles. His lawsuit alleges that in 2011, after he asserted concerns about tax issues and a possible fraud on Howard, the university transferred him to a lesser position with significantly diminished responsibilities. He complains that such transfer was also occasioned by his race (black) and in retaliation for his filing of an internal complaint. These facts, he alleges, support causes of action under the False Claims Act, Title VII, 42 U.S.C. § 1981, and the D.C. Human Rights Act.

Howard has now responded by filing a Motion to Dismiss, which argues that Pitts has sufficiently pled neither a "protected activity" under the FCA nor an "adverse employment action" under the discrimination and retaliation counts. Unconvinced by Defendant's contentions, the Court will deny its Motion.

**I.    Background**

According to Plaintiff's Complaint, which the Court must presume true for purposes of this Motion, Pitts has been employed at Howard since November 1998. See Compl., ¶ 1. After beginning as a Section Chief in the Office of the Controller, he moved in March 1999 to

1

Director of Cash Management, then in 2007 to Senior Treasurer Director, and in January 2010 to Assistant Treasurer. See id., ¶ 9. In March 2010, Plaintiff raised his concerns about unspecified tax issues, which involved financial mismanagement and a possible fraud on the university, to the Deputy Chief Financial Officer, a "Ms. Sarikas," who "told [him] to form a task force to determine the full scope of the problem." Compl., ¶¶ 24, 34. After he did so and offered a recommendation, things began heading south. The recommendation was rejected "without review," and Pitts was informed that "he was to have no further involvement in tax issues." Id. More alarming, Sarikas thereafter began to refer to blacks on her staff as "you people," to exclude Plaintiff from meetings, and to unfairly blame him for problems. See id.

On October 7, 2010, Pitts filed an official internal complaint alleging a pattern of race discrimination against blacks and a hostile work environment directed against him because of his race, see id., ¶¶ 10, 25, and he followed this up less than three weeks later with a formal charge with the Equal Employment Opportunity Commission and the D.C. Office of Human Rights, alleging discrimination, harassment, and retaliation. See id., ¶ 11. He also complained to the EEOC that Sarikas did not provide him with a performance appraisal, which could have made him eligible for a raise. See id., ¶ 30. As a result of his complaint, he was removed from his Assistant Treasurer position on March 22, 2011, and placed in the position of Payroll and Budget Officer. See id., ¶ 12. This meant that Pitts went from a position that supervised 26 direct reports to one that supervised only four. See id., ¶ 19. He also lost a number of responsibilities in the demotion. See id., ¶ 20. His annual salary of $140,000 remained constant. See id., ¶ 23.

Pitts further alleges that the Howard University EEO office that conducted an investigation of his internal discrimination complaint recommended counseling for Plaintiff's

supervisors. See id., ¶ 27. The chronology of the Complaint, however, becomes confused here. Plaintiff alleges that Howard, through its Deputy General Counsel, also informed him in November 2011 that he would be reassigned to the Office of Human Resources to function as its Director of Payroll. See id., ¶ 28. Yet, Plaintiff then says he signed the reassignment letter on May 22, 2011, which is six months earlier. See id., ¶ 29. It is also unclear whether "May 22, 2011" in ¶ 29 is the same as "March 22, 2011" in ¶ 12 or how the November 2011 letter in ¶ 28 precedes either of these, even though the timeline of incidents implies it did.

In any event, in July 2012, Plaintiff was moved back to the CFO's office, albeit in a lesser position than Assistant Treasurer, which move was ostensibly "in retaliation for [his] threat that he would possibly engage in whistleblowing regarding the financial mismanagement he had observed." Id., ¶ 31.

He filed this suit on September 13, 2013, asserting causes of action for Retaliation in Violation of the False Claims Act (Count I), Race Discrimination in Violation of Title VII (Count II), 42 U.S.C. § 1981 (Count III), and the D.C. Human Rights Act (Count IV), and Retaliation for Filing an EEOC Charge in Violation of Title VII (Count V). Defendant has now moved to dismiss.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens

Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 556.

**III. Analysis**

In seeking dismissal, Howard offers two principal arguments: first, that Plaintiff's False Claims Act count cannot succeed because he did not engage in a protected activity; and second, that Pitts's remaining discrimination and retaliation claims are deficient in that they fail to allege any unlawful employment practice. The Court treats each in turn.

A.  False Claims Act

The False Claims Act prohibits a false or fraudulent request or demand for money from the United States Government, as well as false statements or acts intended to defraud the Government of money or property, and it empowers private individuals to bring civil actions for the recovery of damages in the Government's name.  See 31 U.S.C. §§ 3729-33.  Section 3730(h), moreover, permits an employee to sue for retaliation where his employer discriminated against him because of actions he took "in furtherance of [a False Claims Act suit] or other efforts to stop 1 or more violations of this subchapter."  "[T]o make out a claim of retaliation, an employee must demonstrate that: (1) he engaged in protected activity, that is, 'acts done ... in furtherance of an action under this section'; and (2) he was discriminated against 'because of' that activity."  United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 736 (D.C. Cir. 1998).

Howard first maintains that "Plaintiff fails to allege that he took any acts in furtherance of a *qui tam* suit [another name for an FCA action]."  Mot. at 5.  Yet, the D.C. Circuit has made clear that an employee need not file – or even prepare to file – a private *qui tam* action to render his conduct protected.  See Yesudian, 153 F.3d at 740.  Instead, employees who "are collecting information about a possible fraud, before they have put all the pieces of the puzzle together," are also covered.  Id.  In other words, "it is sufficient that a plaintiff be investigating matters that 'reasonably could lead' to a viable False Claims Act case."  Id. (citation omitted).  In fact, it is not even "necessary [that a plaintiff] 'know' that the investigation he was pursuing could lead to a False Claims Act suit."  Id. at 741 (citations omitted).  "An initial investigation may well further an action under the Act, even though the employee does not know it at the time of the investigation."  Id.  In sum, "[n]othing in the statute suggests that any kind of earlier

5

communication with the government – or with anyone outside of his employing institution – is required to satisfy the 'acts in furtherance' requirement." Id. at 741-42 (citations omitted).

The D.C. Circuit has recently summarized these holdings in pithier language:

> In terms of § 3730(h), an employee can be acting "in furtherance of an action under this section" – can be engaging in protected activity – although the employee is not contemplating bringing a *qui tam* suit, is not even aware that there is such a thing as a *qui tam* action, and has no idea whether his – the employee's – investigation or other acts, if made known to the government, might cause the Attorney General to sue his employer under the False Claims Act. From this, it follows that the employer may incur liability under § 3730(h) even if the employer has no inkling that a False Claims Act suit may be in the offing.

United States ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1238 (D.C. Cir. 2012)

Given this liberal standard, Pitts clears the bar at this stage despite the fairly cursory allegations set forth in his Complaint. More specifically, he alleges that he brought concerns about tax issues to Sarikas in March 2010, formed a task force to "determine the full scope of the problem," and thereafter made a recommendation, which was rejected. See Compl., ¶ 24. He also alleges that he "reported the potential irregularities and financial mismanagement that he discovered, issues which may have uncovered a possible fraud upon Howard University." Id., ¶ 34. This is sufficient to constitute protected activity.

Howard also contends that no substantive FCA claim exists here since Plaintiff did not allege "the presentation of a false or fraudulent claim by Howard for payment or approval by the government. To the contrary, Plaintiff specifically alleges that the activity 'may have uncovered a possible fraud upon Howard University' and not the government at all." Mot. at 5-6 (citing Compl., ¶ 34) (emphasis added by Defendant). Yesudian also dealt with this issue. The Court of Appeals there first noted, after detailed analysis, that it was likely that a *qui tam* suit could be brought by someone alleging the presentation of a false claim to certain federal grantees, not just

6

to the federal government, since such claims would be "'effectively' presented to the United States because the payment comes out of funds the federal government gave the grantee." 153 F.3d at 738. In fact, Howard was the defendant in Yesudian as well, and the court there found a sufficiently close nexus between the claim on the university, a significant federal grantee, and a claim on the United States. Id. at 738-39. The D.C. Circuit ultimately concluded, however, that it need not decide this question since, as discussed above, retaliation could be taken against someone involved in the investigation of an FCA claim, even if such claim turned out to be unsuccessful – because, for example, the false claim was never resubmitted by the grantee to the federal government. Id. at 739-40. For the same reason, this Court does not find that Howard's argument warrants dismissal of Plaintiff's FCA retaliation count.

### B. Discrimination and Retaliation

Howard next asks the Court to dismiss Pitts's four remaining counts of discrimination and retaliation on the ground that he "fails to allege any unlawful employment practice by Howard. In other words, Plaintiff does not allege any changes to the terms and conditions of his employment that were either adverse or retaliatory." Mot. at 7. Defendant is correct that a non-retaliation claim requires an adverse employment action. "'[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" Czekalski v. LaHood, 589 F.3d 449, 454 (D.C. Cir. 2009) (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). Such adverse actions may include "[w]ithdrawing an employee's supervisory duties" or a "reassignment with significantly different responsibilities." Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (internal quotation marks and citations omitted). Retaliation claims,

conversely, require only an act that "a reasonable employee would have found ... materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006) (citation and internal quotation marks omitted). The distinction, however, does not prove dispositive at this point since Plaintiff meets the higher standard.

Although, as already mentioned, the Complaint is somewhat confused on its dates, Pitts here has alleged that Howard transferred him on "March 22, 2011," from "his position as Assistant Treasurer to the position of Payroll and Budget Officer." Compl., ¶ 26; compare id., ¶ 29 (transfer on "May 22, 2011," to "position as Director of Payroll/Budget Officer"). On July 1, 2012, Pitts was moved back to the CFO's office, but not restored to his position as Assistant Treasurer. See id., ¶ 31. The Assistant Treasurer has 26 direct reports, while the "Payroll Director/Budget Officer" has only four. Id., ¶ 19. The latter, furthermore, has fewer responsibilities than the former. See id., ¶ 20. In addition, Deputy CFO Sarikas "failed to provide Plaintiff with a performance appraisal, thereby making him ineligible for a raise beyond the 3% cost of living allowance." Id., ¶ 30. Pitts does not allege, however, that his compensation was otherwise reduced in either transfer.

Although this question is hardly a slam dunk for Pitts, he does put the ball in the basket, at least at this stage of the proceedings. The reduction by over 80% of his direct reports, accompanied by diminished responsibilities, seems enough to meet the definition of "reassignment with significantly different responsibilities" under Peters, 475 F.3d at 364. Add in Plaintiff's inability to obtain a raise beyond the COLA and his July 2012 return to the CFO's office in a lesser position, and he defeats Howard's Motion on this issue. See, e.g., id. at 365 ("Whether a particular reassignment of duties constitutes an adverse action ... is generally a jury

8

question. The court may not take that question away from the jury if a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities.") (internal citation omitted); Ohal v. Board of Trustees of Univ. of Dist. of Columbia, 100 Fed. Appx. 833, 834 (D.C. Cir. 2004) (unpublished) ("a material reduction of supervisory responsibilities, no less than a total deprivation of such responsibilities, can amount to an adverse employment action").

While Plaintiff's Complaint is admittedly quite thin in places – *e.g.*, in relation to hostile work environment – which may ultimately foreclose its survival intact through trial, the Court here considers only the argument Howard has raised – namely, the question of adverse action. As Plaintiff prevails at this point on that issue, Defendant's Motion as to these counts will be denied.

**IV.     Conclusion**

Because Defendant's arguments do not carry the day, the Court will deny its Motion to Dismiss, as a contemporaneous Order will indicate.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 9, 2014

9